**AKERMAN LLP**
SARAH KROLL-ROSENBAUM (SBN 272358)
sarah.kroll-rosenbaum@akerman.com
DAMIEN P. DELANEY (SBN 246476)
damien.delaney@akerman.com
NANCY SOTOMAYOR (SBN 312022)
nancy.sotomayor@akerman.com
601 West Fifth Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

Attorneys for Defendant
TRACTOR SUPPLY COMPANY

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANN EICHINGER, an individual, on behalf of herself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRACTOR SUPPLY COMPANY; and DOES 1 thru 50, inclusive,<br><br>Defendants. | Case No.: 1:21-cv-01681-NONE-HBK<br><br>**DECLARATION OF MELISSA WILLIAMSON IN SUPPORT OF DEFENDANT TRACTOR SUPPLY COMPANY'S MOTION TO COMPEL ARBITRATION**<br><br>Complaint filed: October 21, 2021<br>Trial Date: None |

CASE NO. 1:21-cv-01681-NONE-HBK
**DECLARATION OF MELISSA WILLIAMSON**
61517638;2

# DECLARATION OF MELISSA WILLIAMSON

I, Melissa Williamson, hereby declare and state as follows:

1.  I am Vice President, Total Rewards for Tractor Supply Company ("TSC"), defendant in the above-entitled action. As part of my duties in this role, I oversee the onboarding process for new TSC employees. I also regularly collaborate with the TSC employees responsible for operating and maintaining the electronic systems through which new employees apply for employment with TSC, receive and accept offers of employment, and/or complete required onboarding tasks, including acknowledging that they have reviewed and acknowledged required documents, including TSC's Employee Handbook, and prior to December 2019, the TSC Mutual Arbitration Agreement. I am also familiar with the electronic records generated during this process which document an employee's completion of the onboarding process. All statements in this declaration are based on my personal knowledge, or information provided to me by the TSC employees with whom I collaborate in the performance of my ordinary duties, and who obtained that information in the course of performing their ordinary duties.

2.  In late 2018, TSC announced to employees that it would implement a company-wide mandatory arbitration agreement (the "Mutual Arbitration Agreement"). Tractor Supply required all employees in California to review and agree to the Mutual Arbitration Agreement, and employees who did not agree to the Mutual Arbitration Agreement could not continue employment. Employees were notified that they would be able to review and sign the Mutual Arbitration Agreement between February 25, 2019 and March 11, 2019. Tractor Supply provided store managers with communications guidance in order to speak with employees about the Mutual Arbitration Agreement, address any questions that may arise, and remind employees of the deadline to respond to the Mutual Arbitration Agreement. A true and correct copy of the Mutual Arbitration Agreement is attached hereto as **Exhibit 1**.

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

3. TSC presented the Mutual Arbitration Agreement to employees through cloud-based interactive management software provided by a contracted third-party vendor, Cornerstone On-Demand, Inc., which was used for electronic employee training modules and presentation of documents necessary for employees to review and sign in connection with employment. TSC has access to the records generated by this system and relies on the accuracy of these records to ensure employees have received the information presented in the onboarding process and other training programs, which include a number of important company policies, procedures, and agreements; and have agreed to abide by the policies, procedures, and agreements.

4. Each employee at the time of hire would receive a unique user identification and initial welcome password that could only be obtained in a TSC store, to log into TSC's Talent Management System for the first time and access the unique user account on the Talent Management System assigned to him or her. Upon first logging into the Talent Management System using the unique user identification and initial welcome password, the user was automatically prompted and required to change their password to proceed. The employee could thereafter only access the TSC Talent Management System by entering their unique username and self-selected password, and the electronic system would then associate all of their actions with their user account. No TSC employees had access to the self-selected password of any other TSC employee or new hire. Only three to five TSC administrative employees were able to access the new employee's user account on the Talent Management System to monitor the new employee's progress in completing the various tasks involved in the onboarding process, but none of these administrative employees were permitted to complete any onboarding tasks for new employees.

5. The Mutual Arbitration Agreement was communicated to current employees, like Plaintiff Joann Eichinger, through in-store meetings, in which employees were informed of the new agreement and directed to review and sign it.

Because Eichinger was a store manager, she would have been responsible for conducting the initial meeting with employees in her store to announce the Mutual Arbitration Agreement, to direct the employees to the Talent Management System to review and sign it, and to follow up with employees who did not timely review and sign the agreement.

6. When an employee went to access the Mutual Arbitration Agreement, the employee would sign into the Talent Management System, and would be presented on the first screen with a list of tasks to be completed. As of February 25, 2019, the Mutual Arbitration Agreement was listed among those tasks. If the employee selected the Mutual Arbitration Agreement, the employee would then be able to review the entire agreement. The Mutual Arbitration Agreement appeared in the interactive electronic system in a text window with a scroll bar. The employee could review the entire agreement in the text window using the scroll bar. Upon reaching the end of the document, the user would electronically sign the Mutual Arbitration Agreement stating that "my electronic signature is as valid as my hand-written signature." For the electronic signature, the user was presented with two boxes: (1) a box for the employee to type in their full name if they consented to be bound; and (2) a box for the employee to enter the last four digits of their social security number if they consented to be bound. Additionally, at the bottom of the page, there were two additional options: (1) "Save/Return Later," allowing the employee the opportunity to continue without agreeing at that time to the Mutual Arbitration Agreement; or (2) "Submit Final Answers," submitting the employee's consent to be bound. Regardless of the option selected, the employee would return to the main screen in the Talent Management System after making the selection. Employees were able to print their own copy of the Mutual Arbitration Agreement from the system.

7. The Talent Management System stored and archived the responses provided by users, including responses to the Mutual Arbitration Agreement. Those